UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORENZO DOLES, VICTOR EDMONDSON, )
and KAMALA COLLINS, )
)
Plaintiffs, )
) No. 04 C 0797
v. )
) Judge James B. Moran
CITY OF HARVEY, DEPUTY Marshal )
KEVIN JONES, OFFICER WILLIAMS, )
and OTHER UNKNOWN HARVEY POLICE ) Magistrate Judge
OFFICERS, ) Arlander Keys
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

Lorenzo Doles, Victor Edmondson and Kamala Collins have sued the City of Harvey, Deputy Marshal Kevin Jones, and several Harvey police officers, alleging numerous constitutional rights violations under 42 U.S.C. §1983. Specifically, in their First Amended Complaint, the plaintiffs allege that, on December 23, 2003, while they were visiting friends at 15711 Lexington Avenue in Harvey, Deputy Marshal Jones and approximately four Harvey police officers busted down the door of the residence, using a battering ram, without having first identified themselves as police officers. The plaintiffs further allege that Deputy Marshal Jones and the officers burst into the residence with their guns drawn, and ordered the plaintiffs to kneel down in the residence's dining room. The plaintiffs allege that the

defendants then searched them, stealing in the process $225 from Lorenzo Doles' pocket, kicked and beat them, and strip searched them. The plaintiffs further allege that one of the officers, Officer Raymone Williams, searched one of the residence's bedrooms, emerging with a "marked" $20 bill he claimed to have found there. The plaintiffs allege, among other things, that they were physically injured as a result of the officers' beatings, and that they were denied medical attention for a period of time. The plaintiffs also allege that the City held them for more than 60 hours before bringing them before a judge, who, once apprised of the case, summarily dismissed the charges against them.

In their complaint, the plaintiffs allege several claims for violation of 42 U.S.C. §1983 (e.g., excessive force, unlawful search and seizure); they also allege several state law claims (trespass and false arrest/false imprisonment, among others). The plaintiffs seek to hold the individual defendants responsible for the deplorable way in which they allegedly conducted themselves, and they also seek to hold the City of Harvey responsible for creating an atmosphere that allowed those individual defendants to behave in such a manner.

The defendants deny the plaintiffs' allegations of wrongdoing. The defendants' version of events is that, on December 23, 2003, plaintiffs Doles and Edmondson were caught

2

selling drugs. When the defendant officers tried to arrest them, they fled into the house on Lexington Avenue, and the police followed. The defendants contend that any injuries the plaintiffs may have suffered on that date were the result of their attempts to resist arrest, and not the result of any unconstitutional behavior on the part of the defendants.

Discovery in the case has been proceeding, uneventfully for the most part. On December 8, 2004, Judge Moran referred the case to this Court to conduct hearings and enter appropriate orders with respect to the supervision of all discovery matters. To that end, the case is presently before the Court on a motion filed by the City of Harvey to bifurcate the proceedings and stay discovery on the plaintiffs' "policy" claim, the claim alleging that the City of Harvey's policies concerning the training, supervision, control and discipline – or the lack of any of the above – of its police officers manifests the City's deliberate indifference to the rights of the people with whom those officers and marshals come into contact.[1]

Federal Rule of Civil Procedure 42(b) permits the Court to sever claims or issues "in furtherance of convenience or to avoid

---

[1]Such a claim, also called a *Monell* claim – arises from *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), in which the Supreme Court held that a plaintiff injured by employees or agents of a local government may sue that government under 42 U.S.C. §1983 "when execution of [that] government's policy or custom . . . inflicts the injury." *Id.* at 694.

3

prejudice, or when separate trials will be conducive to expedition and economy . . . ." The Court has "considerable discretion" in deciding whether to bifurcate a trial or whether to sever claims. See *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Here, although there are certainly pros and cons to the issue, the Court finds that the circumstances presented weigh against bifurcation of these proceedings.

First, it is true that the plaintiffs' policy claim will involve elements of proof beyond those involved in the claims against the individual officers. The latter claims will focus solely on what happened in and around the house on Lexington Avenue on the evening of December 23, 2003, and on the officers' subsequent arrest and treatment of plaintiffs Doles and Edmondson; the former claims will likely focus on how the City trains its officers and how it disciplines those officers determined to have crossed the line with respect to citizens' constitutional rights. And it is also true that, in some cases, trial of the claims against the individual defendants might obviate any need to try the policy claim; certainly, the plaintiffs cannot recover under *Monell* unless they first prove that their rights were, in fact, violated by the City's officers or agents.

But the likelihood that a second trial will be avoided is diminished in a case where, as here, the individual defendants

4

have pled qualified immunity as an affirmative defense to the plaintiffs' allegations. In that case, the plaintiffs could lose on their claims against the individual defendants, under the doctrine of qualified immunity, and yet still win on their policy claim against the City, which is not entitled to the defense. *See Medina v. City of Chicago*, 100 F.Supp. 2d 893, 896 (N.D. Ill. 2000)(citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and *Owen v. City of Independence*, 445 U.S. 622 (1980)). Worse yet, that second trial will necessarily require a rehash of the same factual issues involved in the trial of the individual officers.

On a similar score, it is true that Illinois law generally requires municipalities to pay tort judgments for compensatory damages awarded against an employee of that municipality, *see* 745 ILCS 10/9-102, which would appear to mean that a plaintiffs' *Monell* claim adds nothing to the mix in terms of economics. But, as the court noted in *Medina*, 100 F. Supp. 2d at 896, "there is no guarantee that the municipality, after a verdict against the officer in a bifurcated trial, will concede 9-102 liability," undermining somewhat the idea that Illinois law would render any policy claim redundant. Notably, the City of Harvey has not said that it would concede liability under §9-102; on the contrary, it acknowledges the possibility that it might refuse to indemnify defendants for the amount of any verdict. *See* Reply Brief, p. 4.

Additionally, although the Court is aware that discovery concerning a city's law enforcement policies and practices may be burdensome in the abstract, the City of Harvey has not provided the Court with any statistics or evidence to suggest that, in this particular case, complying with discovery on the policy claim would be oppressive. In fact, the plaintiffs have limited their discovery requests to the past five years, suggesting that just the opposite might be true.

Finally, the Court finds that the plaintiffs' conscious and - knowing plaintiffs' counsel - informed and advised decision to sue the City as well as the individual officers is entitled to respect. So too the notion that a claim against the City may be more likely than a claim against individuals to spur the implementation of preventative measures.

The Court is mindful of the possibility that evidence offered to prove a policy claim - which likely will involve instances of excessive force and other constitutional violations committed by other members of the City's police force - might, arguably, prejudice the individual defendants. But, at this point, without knowing what that evidence is, and without knowing the extent of any prejudice resulting therefrom, the Court is unwilling to say that the claims must be severed. To support its bifurcation request, the City points to several news reports detailing abuses within the Harvey police department, none of

which involve the individual defendants sued here, and claims that these reports could, if introduced, prejudice a jury against the individual officers involved in this case. To be sure, the reports reflect badly on the City and its police department. But that is not the concern on bifurcation; the concern is whether a joint trial would prejudice the defendants, and, at least at this point, the Court is satisfied that, with proper jury instructions, prejudice can be avoided. As discovery continues and the case moves toward trial, the parties and the Court may revisit the issue of prejudice and severance to the extent necessary.

The City has argued in its reply brief that "'public debate and scrutiny' [about the City's practices] should not be at the expense of two law enforcement officers on trial for a single episode of alleged misconduct." Reply Brief, p. 6. But, fundamentally, the plaintiffs are alleging both that these officers behaved badly and that the City's practices and policies allowed, and even encouraged, that bad behavior. The plaintiffs' case is, in short, bigger than just this one instance of alleged misconduct – indeed, that is precisely the point of alleging the *Monell* claim in the first instance. At bottom, the Court is persuaded, at least for now, that the plaintiffs are entitled to pursue their policy claim against the City, along with their claims against the individual defendants. Accordingly, the Court

denies the defendants' Motion for Bifurcation and Stay of Discovery on *Monell* Claims.

Dated: January 21, 2005

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge