UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORENZO DOLES, VICTOR EDMONDSON, and KAMALA COLLINS, | ) ) ) |
| Plaintiffs, | ) ) ) No. 04 C 0797 |
| v. | ) ) Judge James B. Moran |
| CITY OF HARVEY, DEPUTY MARSHAL KEVIN JONES, OFFICER WILLIAMS, and OTHER UNKNOWN HARVEY POLICE OFFICERS, | ) ) ) ) Magistrate Judge ) Arlander Keys ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Lorenzo Doles, Victor Edmondson and Kamala Collins have sued the City of Harvey and numerous employees in the City's police department, alleging that these defendants trampled their constitutional rights in a variety of ways. In their complaint, the plaintiffs allege several claims for violation of 42 U.S.C. §1983 (e.g., excessive force, denial of medical attention, failure to intervene, unlawful search and seizure, unlawful detention, false arrest); they also allege several state law claims (e.g., trespass, false arrest/false imprisonment, malicious prosecution). The plaintiffs seek to hold the individual defendants responsible for the deplorable way in which they allegedly conducted themselves, and they also seek to hold the City of Harvey responsible for creating an atmosphere that allowed those individual defendants to behave in such a manner.

The defendants deny the plaintiffs' allegations of wrongdoing; they contend that the plaintiffs were arrested on December 23, 2003 for selling crack cocaine, and that any injuries they may have suffered that evening were the result of their attempts to escape and avoid arrest, and not the result of any unconstitutional behavior on the part of the defendants.

The case has been referred to this Court for discovery supervision, and, for the most part, discovery has been proceeding smoothly. To date, the plaintiffs have deposed several of the officers who were involved, in one degree or another, in the plaintiffs' arrest, as well as the officer who transported the plaintiffs to the police station, and two of the detention officers who were on duty during the time that the plaintiffs were detained. The defendants have taken the plaintiffs' depositions, and the parties have scheduled the depositions of several third-party witnesses to the events described in the complaint. The parties have also exchanged some documentary discovery requests.

On November 24, 2004, the City filed a motion to bifurcate the case and to stay discovery on plaintiffs' policy or *Monell* claim against the City until after the claims against the individual defendants could be resolved. On January 21, 2005, the Court denied that motion. The plaintiffs now seek leave to take some additional depositions, most of which pertain to the

*Monell* claim.

The plaintiffs seek leave to depose at least 21 more witnesses, and possibly substantially more than that, depending on how many witnesses the City identifies in response to the plaintiffs' Rule 30(b)(6) Deposition Notice. In the federal courts, parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The information sought through discovery need not necessarily be admissible at the trial; rather it must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Additionally, although the federal rules generally limit parties to ten depositions each, the rules direct the Court to grant leave to take additional depositions to the extent that doing so would not, *inter alia*, result in unreasonable duplication or inconvenience, or cause undue burden or expense, as compared with the likely benefit of that discovery. See Fed. R. Civ. P. 26(b)(2), 30(a)(2)(A).

Turning to the specifics of the plaintiffs' motion, the plaintiffs first seek leave to depose four more detention officers - Officers Thomas, Wiley, Green and Walker. The request is granted. The plaintiffs have alleged various constitutional violations that occurred during the time they were detained at

the Harvey police station, and these officers were on duty during some or all of the time that the plaintiffs were being held there. The plaintiffs are entitled to explore what, if anything, these witnesses might contribute concerning the duration and the conditions of the plaintiffs' detention, and the Court is not persuaded that the discovery is unreasonably duplicative of what the plaintiffs have already obtained.

Arguably along similar lines, the plaintiffs seek to depose Sergeant Revelee and Commander Haines, the supervisors in the detention area. That request is denied; neither individual had any contact with the plaintiffs, and anything they might be able to add concerning the conditions of confinement that generally exist at the Harvey police station could be adequately addressed by the witnesses who did, in fact, come into contact with the plaintiffs. Additionally, to the extent the plaintiffs seek to depose Sergeant Revelee and Commander Haines to obtain discovery concerning the general policies and customs implemented in the detention areas, that information may be obtained from the witness or witnesses designated in response to the plaintiffs' Rule 30(b)(6) Notice.

The plaintiffs next seek to depose the watch commander on duty the night plaintiffs were arrested. Although there is no indication that the watch commander had any contact with the plaintiffs, the plaintiffs have argued that, according to City

4

policy, the watch commander would have been notified immediately after the plaintiffs requested medical attention. To the extent that happened, and to the extent the watch commander might be able to add something beyond the documentary evidence on this point, the plaintiffs are entitled to explore the issue. The plaintiffs also seek to depose Officer Napier, who participated in the plaintiffs' arrest on December 23, 2003. The defendants do not oppose this part of the motion, and, based upon his presence at the scene, the Court will allow the plaintiffs to depose Officer Napier.

Next, the plaintiffs seek to depose Commander Keel, Commander White, Deputy Chief Eaves, Mayor Eric Kellogg, Chief Joshua and Investigator Porter, all in an effort to obtain information concerning a document known as the "Keel Memo" and to expose an alleged pattern on the part of the Mayor to establish his own personal "goon squad." As an initial matter, the Court finds that, in light of the ruling on the motion to bifurcate, the plaintiffs are entitled to proceed with the 30(b)(6) depositions they describe in their motion. Thus, the City is going to have to identify one or more witnesses knowledgeable about the City's policies, practices and procedures on police misconduct, detention and confinement of arrestees, satisfying arrestees' constitutional rights and concerns, and conducting drug sting operations. To the extent any of the individuals

listed above is identified as a 30(b)(6) witness on any of these issues, they may be deposed. Beyond that, the Court finds that the plaintiffs are entitled to depose Commander Keel, who allegedly instructed some police department employees that City policy and custom allowed them to steal money from arrestees, and Commander White and Deputy Chief Eaves, respectively, the writer and recipient of the "Keel Memo," which supposedly documents Commander Keel's instructions concerning department policy. At this point, discovery concerning the "Keel Memo" would appear likely to lead to the discovery of admissible evidence, given that the memo allegedly suggests that Commander Keel trained or instructed certain police department employees that stealing money from arrestees was sanctioned – a practice specifically at issue in this case. Should the Keel Memo or the evidence related to that memo turn out to be irrelevant to the question of whether any City policy or custom caused the specific injuries suffered by the specific plaintiffs involved in this lawsuit, the City is free to challenge the admission of that evidence on a motion *in limine*.

With regard to Mayor Kellogg, Chief Joshua and Investigator Porter, the Court is not persuaded that these depositions are likely to lead to any relevant, admissible evidence, and the Court declines to order them at this time. Doing so now would be, at best, premature and, at worst, oppressive, given that

6

nothing in the record so far links these individuals to the Keel Memo, or any policy or custom that might have harmed the plaintiffs.

Next, the plaintiffs seek to depose seven sergeants and officers – Wells, Damiani, Ellison, Crocker, Nevers, Perley and Daigre – who were allegedly in attendance at the roll call meeting where Commander Keel allegedly advised the attendees that the department sanctioned the stealing of money from arrestees. Given that the Court is already ordering the depositions of Commander Keel and the writer and recipient of the Keel Memo, the Court is unwilling to order another seven depositions, all likely to lead to the discovery of evidence on the same single point. The Court will allow the plaintiffs to depose just two of these seven witnesses; the plaintiffs may elect which two they would like to depose.

Some final words of caution and instruction are in order. The Court has recognized that the plaintiffs have a right to pursue their *Monell* claim and to conduct discovery into their allegations involving the City's practices and policies. But the Court is unwilling to cast as wide a net on the City of Harvey as the plaintiffs would like; there will be no fishing expedition here. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) holds that a local government can be sued under 42 U.S.C. § 1983, but only "when execution of a

government's policy or custom ... inflicts the injury." *Id.* at 694. The relevant areas of inquiry on discovery on such a *Monell* claim necessarily concern the defendant government's policies and customs, not the particular acts of one or two renegade employees in that government. Accordingly, at this time, the Court is willing to permit the plaintiffs some latitude in discovery only to the extent that the misconduct alleged to be ongoing in the City of Harvey bears some resemblance to the alleged misconduct that occurred in this case. Thus, even if it turns out that the City or its Mayor have adopted policies and customs that generally harm the citizens of Harvey, that fact will be relevant to this lawsuit only if the plaintiffs can show that they were injured as a result of those policies or customs.

## CONCLUSION

For the reasons set forth above, the plaintiffs' Motion for Leave to Take More Than Ten Depositions [#11] is granted in part and denied in part. The plaintiffs are granted leave to depose Officers Thomas, Wiley, Green and Walker, the Watch Commander on duty during the plaintiffs' detention, Officer Napier, Commander Keel, Commander White, Deputy Chief Eaves, the witness or witnesses identified in response to plaintiffs' Rule 30(b)(6) Notice, and two of the sergeants/officers who were allegedly present at the roll call meeting that was the subject of the Keel Memo. The plaintiffs' motion is denied with respect to the

8

remaining five sergeants/officers; the motion is also denied with respect to Sergeant Revelee, Commander Haines, Mayor Kellogg, Chief Joshua, and Investigator Porter.

Dated: January 26, 2005

        ENTER:

        _____
        ARLANDER KEYS
        United States Magistrate Judge